UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA

v.

SHAKTI SONI,

Defendant.

_____/

Case: 2:25−cr−20588
Assigned To : DeClercq, Susan K.
Referral Judge: Patti, Anthony P.
Assign. Date : 8/1/2025
Description: INFO USA V. SONI (NA)

VIO.:      18 U.S.C. § 371

## INFORMATION

THE UNITED STATES ATTORNEY CHARGES:

## GENERAL ALLEGATIONS

At all times relevant to this Information:

### The Medicare and Medicaid Programs

1.      The Medicare program ("Medicare") was a Federal health care program providing benefits to persons who were age 65 or older or disabled.  Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services ("HHS"). Individuals who received benefits under Medicare were referred to as Medicare "beneficiaries."

1

2.      Medicare was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b), and a "Federal health care program," as defined by Title 42, United States Code, Section 1320a-7b(f).

3.      Medicare "Part D" subsidized the costs of prescription drugs for Medicare beneficiaries in the United States.  Part D benefits were administered by private insurance plans, often referred to as Medicare drug plan "sponsors," through prescription drug plans ("Prescription Drug Plan"), that were reimbursed by Medicare through CMS.

4.      Under Part D, a pharmacy was authorized to contract with multiple Medicare drug plan sponsors or its Pharmacy Benefit Manager ("PBM") and submit claims for prescriptions filled and dispensed to Medicare beneficiaries.

5.      Typically, a Medicare beneficiary enrolled in a Prescription Drug Plan filled their prescription at a pharmacy utilizing their benefits to cover the cost of the prescription.  Generally, Medicare covered these costs if, among other requirements, the prescribed drugs were medically necessary and were ordered by a physician. The pharmacy then submitted to a PBM a claim for reimbursement for filling the prescription to the beneficiary's Prescription Drug Plan under the beneficiary's Health Insurance Claim Number and/or Medicare Plan identification number.

2

**Pharmacy Benefit Managers**

6.      PBMs managed prescription drug benefits provided by Medicare (through Medicare drug plan sponsors).

7.      Pharmacies entered into pharmacy provider agreements to enroll with PBMs.  As part of this enrollment, pharmacies agreed to operate in compliance with applicable laws and further agreed that the pharmacies would not submit incomplete, false, or fraudulent claims for reimbursement.  Additionally, in the enrollment and certification forms, the pharmacies were required to provide basic information about the operation and ownership of the pharmacy, including the names of the owners, and whether the pharmacy was a mail order or community retail pharmacy.

8.      The PBMs then relied upon information submitted in these forms as the primary basis for allowing the pharmacies to become a pharmacy provider within their networks.  Entry into these PBM networks allowed pharmacies to bill and receive reimbursements for prescriptions provided by the pharmacies.

9.      Following enrollment, a pharmacy submitted a claim for a prescription drug dispensed to a beneficiary, typically electronically, to the PBMs acting on behalf of Medicare drug plan sponsors.  PBMs, on behalf of the Medicare drug plan sponsors, reimbursed the pharmacy, typically electronically, through direct deposits

3

into accounts held, and previously identified, by the pharmacy.  Accordingly, PBMs received, adjudicated, and paid claims on behalf of Medicare.

10.    Express Scripts and Humana were two of the PBMs that managed prescription drug benefits for Medicare through Medicare drug plan sponsors.

### Defendant and Co-Conspirators

11.    Defendant SHAKTI SONI was a resident of Rockwall County, Texas. SHAKTI SONI had an ownership interest in: (a) Medcrafters Rx Pharmacy LLC ("Medcrafters"); (b) Falcon Medical Pharmacy LLC ("Falcon"); (c) Cherry Hill Village Pharmacy LLC ("Cherry Hill"); (d) Pembrooke Health Services LLC ("Pembrooke"); (e) Fortune Rx LLC d/b/a Sherman Pharmacy ("Fortune"); (f) BMS Pharmacy, Inc., d/b/a Wappinger Falls Pharmacy ("BMS"); (g) Pharm House LaVernia LLC ("Pharm House LaVernia"); (h)  SMB Pharmacy Inc. d/b/a Rite Care Pharmacy ("SMB"); and (i) TFL Pharmacy Inc. ("TFL") (collectively, the "Subject Pharmacies").

12.    Co-Conspirator 1 was a resident of the State of Texas and was involved in the ownership and operation of several of the Subject Pharmacies.

13.    Co-Conspirator 2 was a resident of the State of New York and was a marketer for several of the Subject Pharmacies.

**Subject Pharmacies**

14.     Medcrafters was a pharmacy organized in the State of Michigan on or about May 5, 2017.  SHAKTI SONI acquired an ownership interest in Medcrafters on or about November 2, 2017.   SHAKTI SONI, along with others, operated Medcrafters until around July 10, 2019.  Medcrafters was located within the Eastern District of Michigan.

15.     Falcon was a pharmacy organized in the State of Michigan on or about July 7, 2016.  SHAKTI SONI acquired ownership of Falcon on or about June 13, 2018.  SHAKTI SONI, along with others, operated Falcon until its dissolution on or about October 12, 2020.  Falcon was located within the Eastern District of Michigan.

16.     Cherry Hill was a pharmacy organized in the State of Michigan on or about August 21, 2017.  SHAKTI SONI acquired an ownership interest in Cherry Hill on or about July 11, 2019.  SHAKTI SONI, along with others, operated Cherry Hill until around September 30, 2020.   Cherry Hill was dissolved on or about December 7, 2021.  Cherry Hill was located within the Eastern District of Michigan.

17.     Pembrooke was a pharmacy organized in the State of Maryland on or about July 31, 2014.  SHAKTI SONI acquired an ownership interest in Pembrooke on or about September 19, 2018.  SHAKTI SONI, along with others, operated Pembrooke until on or about September 30, 2020.

5

18.     Fortune was a pharmacy registered in the State of Texas on or about July 25, 2017.  SHAKTI SONI acquired an ownership interest in Fortune on or about November 20, 2019.  SHAKTI SONI, along with others, operated Fortune until on or about August 30, 2021.

19.     BMS was a pharmacy incorporated in the State of New York on or about July 20, 2020.  SHAKTI SONI acquired an ownership interest in BMS on or about July 20, 2020.  SHAKTI SONI, along with others, operated BMS until on or about March 17, 2022.

20.     Pharm House La Vernia was a pharmacy organized in the State of Georgia on or about September 12, 2017.  On or about September 1, 2021, Pharm House La Vernia was formed in Texas.  SHAKTI SONI acquired an ownership interest in Pharm House La Vernia on or about July 8, 2020.  SHAKTI SONI, along with others, operated Pharm House LaVernia until on or about May 1, 2022.

21.     SMB was a corporation registered in the State of Texas on or about October 15, 2020. SHAKTI SONI acquired an ownership interest in SMB on or about November 8, 2020.  SHAKTI SONI, along with others, operated SMB until on or about May 1, 2021.

22.     TFL was a corporation registered in the State of New York on or about January 9, 2018.  SHAKTI SONI acquired an ownership interest in TFL on or about

January 26, 2018.  SHAKTI SONI, along with others, operated TFL until on or about March 17, 2022.

## COUNT 1
**Conspiracy to Make False Statements relating to Health Care Matters and violate the Anti-Kickback Statute**
**(18 U.S.C. § 371)**

23.     Paragraphs 1 through 22 of this Information are re-alleged and incorporated by reference as though fully set forth herein.

24.     Beginning in or around November 2017, and continuing through in or around May 2022, in the Eastern District of Michigan and elsewhere, Defendant SHAKTI SONI knowingly and willfully conspired and agreed with Co-Conspirator 1, Co-Conspirator 2, and others to:

a.      violate Title 18, United States Code, Section 1035, that is, in any matter involving a health care benefit program, to knowingly and willfully falsify, conceal, and cover up by any trick, scheme, and device a material fact; and make any materially false, fictitious, and fraudulent statement and representation, and make and use any materially false writing and document knowing the same to contain a materially false, fictitious, and fraudulent statement and entry, in connection with the delivery of and payment for health care benefits, items, and services; and

b.      violate the Federal Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b)(2), that is to knowingly and willfully offer and pay any remuneration (including any kickback, bribe, and rebate) directly and indirectly, overtly and covertly, in cash and

7

in kind to any person to refer an individual to a person for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole and in part under a Federal health care program; and to induce such person to purchase, lease, order, and arrange for and recommend purchasing, leasing, and ordering any good, facility, service, and item for which payment may be made in whole and in part under a Federal health care program.

## Purpose of the Conspiracy

25.     It was the purpose of the conspiracy for SHAKTI SONI and others, including Co-Conspirator 1 and Co-Conspirator 2, to unlawfully enrich themselves by: (a) submitting and causing the submission, on behalf of the Subject Pharmacies, of false and fraudulent certification and enrollment forms to Express Scripts and Humana, in order to receive payments for medications they distributed to beneficiaries; (b) paying illegal kickbacks to marketers in exchange for patient information for high-reimbursing medications; (c) concealing the submission of false and fraudulent claims to Medicare and the receipt and transfer of proceeds from the fraud; and (d) diverting proceeds of the fraud for the personal use and benefit of SHAKTI SONI and his co-conspirators, and to further the fraud.

8

**Manner and Means of the Conspiracy**

26.     The manner and means by which SHAKTI SONI and his co-conspirators sought to accomplish the objects and purpose of the conspiracy included, among others, the following:

27.     SHAKTI SONI, his co-conspirators, and others submitted and caused the submission of false and fraudulent enrollment and certification forms to PBMs, including Express Scripts and Humana, for the purpose of receiving payments from Medicare.

28.     SHAKTI SONI, his co-conspirators, and others knowingly and falsely identified individuals as persons with ownership and managing control of the Subject Pharmacies in enrollment and certification forms that were submitted to Express Scripts and Humana, while SHAKTI SONI, along with others, in fact, maintained ownership and managing control over the Subject Pharmacies. SHAKTI SONI, along with others, caused these misrepresentations to be made in order to conceal and disguise his role in the scheme.

29.     SHAKTI SONI, his co-conspirators, and others also knowingly misrepresented to PBMs that the Subject Pharmacies functioned as community retail pharmacies when they, in fact, functioned primarily as mail order pharmacies. SHAKTI SONI, along with others, caused these false and fraudulent representations to be made in order to avoid additional restrictions that were placed on mail order

pharmacies, increase the likelihood of enrollment approval, and increase the reimbursement rate under PBM contracts.

30.     SHAKTI SONI, his co-conspirators, and others paid illegal kickbacks to marketers in exchange for patient information and prescriptions for high-reimbursing medications.  SHAKTI SONI knew that these payments to marketers pertaining to the procurement of prescriptions amounted to illegal kickbacks under the Federal Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b).

31.     It was further part of the scheme that SHAKTI SONI, along with Co-Conspirator 1, concealed the source of the illegally purchased prescriptions in order to make them appear more legitimate and thereby more likely to pass an audit.

32.     Between November 2017 and May 2022, SHAKTI SONI, his co-conspirators, and others, caused the submission of claims to Medicare that were procured by kickbacks and false statements, resulting in the Subject Pharmacies being paid $14,453,571.80 by Medicare.

### Overt Acts

33.     In furtherance of the conspiracy, and to accomplish its objects and purpose, at least one of the co-conspirators committed and caused to be committed, in the Eastern District of Michigan and elsewhere, the following overt acts, among others:

a. On or about August 11, 2020, Co-Conspirator 1, with SHAKTI SONI's knowledge and approval, caused a check to be made from Cherry Hill to Individual A, Co-Conspirator's 1's cousin, in the amount of $2,985.23.

b. On or about September 20, 2020, Co-Conspirator 1, with SHAKTI SONI's knowledge and approval, caused a check to be made from Cherry Hill to Company A, SHAKTI SONI's affiliated business, in the amount of $10,000.00.

All in violation of Title 18, United States Code, Section 371.

**FORFEITURE ALLEGATIONS**
**(18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461;**
**18 U.S.C. § 982(a)(7))**

34.    The above allegations contained in this Information are incorporated by reference as if set forth fully herein for the purpose of alleging criminal forfeiture to the United States of America of certain property in which SHAKTI SONI has an interest, pursuant to 18 U.S.C. §§ 981(a)(1)(C) and 982(a)(7), and 28 U.S.C. § 2461.

35.    Upon being convicted of the crime charged in Count 1 of this Information, SHAKTI SONI shall forfeit to the United States: (a) any property constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of such violations, pursuant to 18 U.S.C. § 981(a)(1)(C), together with Title 28 U.S.C. § 2461; and (b) any property, real or personal, that constitutes or is derived,

11

directly or indirectly, from gross proceeds traceable to the commission of the offense, pursuant to 18 U.S.C. § 982(a)(7).

36.   *Money Judgment*:  The government shall also seek a forfeiture money judgment from the defendant in the amount of One Million Nine Hundred Sixty-One Thousand Seven Hundred Thirteen Dollars and 70/100 ($1,961,713.70), representing the value of the property subject to forfeiture.

37.   *Substitute Assets*:  If the property described above as being subject to forfeiture, as a result of any act or omission of the defendant:

   a.)   cannot be located upon the exercise of due diligence;

   b.)   has been transferred or sold to, or deposited with, a third party;

   c.)   has been placed beyond the jurisdiction of the Court;

   d.)   has been substantially diminished in value; or

   e.)   has been commingled with other property that cannot be subdivided without difficulty,

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p) as incorporated by 18 U.S.C. § 982(b) and/or 28 U.S.C. § 2461, to seek to forfeit any other property of defendant, up to the value of the forfeitable property described above.

JEROME F. GORGON JR.
United States Attorney

LORINDA LARYEA
Acting Chief
U.S. Department of Justice
Criminal Division, Fraud Section

12

JOHN NEAL
Chief, Anti-Corruption Unit
United States Attorney's Office
Eastern District of Michigan

*/s Syed Ahmadul Huda*
ANDRES Q. ALMENDAREZ
SYED AHMADUL HUDA
Trial Attorneys
U.S. Department of Justice
Criminal Division, Fraud Section
211 W. Fort Street, Suite 2011
Detroit, MI 48226
Phone:  (202) 591-0133
Email: Andres.Almendarez@usdoj.gov
        Syed.Ahmadul.Huda@usdoj.gov

Dated: August 1, 2025

| United States District Court<br>Eastern District of Michigan | **Criminal Case Cover Sheet** | Case Number 2:25−cr−20588 |
| --- | --- | --- |

**NOTE: It is the responsibility of the Assistant U.S. Attorney signing this form to complete it accurately in all respects.**

| **Companion Case Information** | **Companion Case Number:** |
| --- | --- |
| This may be a companion case based upon **LCrR 57.10 (b)(4)[1]**: | **Judge Assigned:** |
| ☐ **Yes**      ☒ **No** | **AUSA's Initials:** |

**Case Title:** USA v. Shakti Soni

**County where offense occurred :** Wayne County, Oakland County

**Check One:**      ☒ **Felony**      ☐ **Misdemeanor**      ☐ **Petty**

_____Indictment/__✓__Information --- **no** prior complaint.
_____Indictment/_____Information --- based upon prior complaint [**Case number:**                    ]
_____Indictment/_____Information --- based upon **LCrR 57.10 (d)** *[Complete Superseding section below]*.

## Superseding Case Information

**Superseding to Case No:** _____      **Judge:** _____

☐ Corrects errors; no additional charges or defendants.
☐ Involves, for plea purposes, different charges or adds counts.
☐ Embraces same subject matter but adds the additional defendants or charges below:

| **Defendant name** | **Charges** | **Prior Complaint (if applicable)** |
| --- | --- | --- |
| Shakti Soni | 18 U.S.C. § 371 | |

**Please take notice that the below listed Assistant United States Attorney is the attorney of record for the above captioned case.**

August 1, 2025
Date

s/Syed Ahmadul Huda

Syed Ahmadul Huda, Trial Attorney
211 West Fort Street, Detroit, MI 48226
Phone: (202) 591-0133
Fax:
E-Mail address: Syed.Ahmadul.Huda@usdoj.gov
Attorney Bar #: P76498

[1] Companion cases are matters in which it appears that (1) substantially similar evidence will be offered at trial, or (2) the same or related parties are present, and the cases arise out of the same transaction or occurrence. Cases may be companion cases even though one of them may have already been terminated.